UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH DUANE ARLINE, JR.,<br><br>                    Plaintiff,<br>v.<br><br>G. J. JANDA, et al.,<br><br>                    Defendants. | Civil No. 11-CV-2450 JLS (NLS)<br><br>**REPORT AND RECOMMENDATION GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>(Dkt. No. 20.) |

Plaintiff Keith Duane Arline, Jr., ("Plaintiff") a prisoner proceeding *pro se*, commenced this action against six corrections officers on October 18, 2011.[1] (Dkt. No. 1.) The complaint was dismissed for failure to state a claim, and Plaintiff filed a first amended complaint ("FAC") on February 28, 2012. (Dkt. Nos. 4 and 5.) He asserts claims pursuant to 42 U.S.C. § 1983 for violations of his Eighth and Fourteenth Amendment rights. (Dkt. No. 5.)

On July 18, 2012, Defendants filed a motion to dismiss; however, this motion was misdirected at the original complaint and was denied without prejudice. (Dkt. Nos. 14 and 19.) Defendants re-filed their motion to dismiss on October 2, 2012, and argue that Plaintiff fails to state a claim on either of his causes of action. (Dkt. No. 20.) Plaintiff filed a response, Defendants filed a reply, and Plaintiff filed a

---

[1] The proof of service Plaintiff attached to his complaint states that on October 18, 2011, he mailed his complaint to the Court. (Dkt. No. 1 at 38.) Pursuant to *Houston v. Lack*, the complaint is deemed filed as of that date. 487 U.S. 266, 276 (1988); *see also Douglas v. Noelle*, 567 F.3d 1103, 1107 (9th Cir. 2009) (applying the "mailbox rule" to § 1983 suits brought by prisoners).

surreply. (Dkt. Nos. 21, 22, and 24.)

## I. FACTUAL BACKGROUND

Plaintiff, currently housed at High Desert State Prison, alleges constitutional violations that occurred while he was incarcerated at Calipatria State Prison. (Dkt. No. 5.) He alleges that he was denied his procedural due process rights at a disciplinary hearing conducted by Defendant Powell. *Id.* at 4. Plaintiff claims he was not allowed to submit "requested favorable documentary evidence (photographs)" and was not allowed to present "exculpatory videotape evidence" to prove his innocence. *Id.* As a result of this alleged deprivation, Plaintiff was housed in administrative segregation for 184 days. *Id.* While in administrative segregation, Plaintiff was kept in his cell for twenty-four hours a day, with the exception of an exercise hour. *Id.* He also had little human contact, had a plastic cover on the cell door obstructing the view out, was kept in restraints while outside of his cell, was not allowed personal property or appliances, and had limited law library access. *Id.* When Plaintiff filed a grievance about his claimed procedural due process violation, Defendant Delgado "approv[ed] the denial" of the grievance. *Id.* at 6.

Plaintiff also claims that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment, under a "failure to protect" theory. *Id.* at 8. While at Calipatria, Plaintiff observed that there was not a surveillance camera in the "main yard" of the prison, and he filed a grievance about it. *Id.* The grievance was denied by Defendant Lewis on the grounds of budgetary constraints, and the denial of the grievance was affirmed by Defendants Kuzil-Ruan, Janda, and Caffarella. *Id.*

## II. LEGAL STANDARDS

### A. Motion to Dismiss

A Federal Rule of Civil Procedure 12(b)(6) motion to dismiss tests the legal sufficiency of Plaintiff's claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). For the sake of deciding the motion, the court must accept as true all material allegations in the complaint, and the reasonable inferences drawn from them, in the light most favorable to Plaintiff. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). This tenet does not extend, however, to legal conclusions cast as factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Iqbal*, 556 U.S. at 678, citing *Twombly*, 550 U.S. at 555. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Iqbal,* 556 U.S. at 679.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678, citing *Twombly*, 550 U.S. at 556. The plausibility standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.,* citing *Twombly*, 550 U.S. at 557 (internal quotations omitted).

Where a plaintiff appears *pro se* in a civil rights case, the court must construe the pleadings liberally and afford the plaintiff the benefit of the doubt. *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988). The rule of liberal construction is "particularly important in civil rights cases." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992). In giving liberal interpretation to a *pro se* civil rights complaint, however, the court may not "supply essential elements of [a] claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). If an action is dismissed pursuant to Fed. R. Civ. P. 12(b)(6), the court must give a litigant leave to amend his complaint "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) quoting *Doe v. U.S.*, 58 F.3d 494, 497 (9th Cir. 1995).

**B.    Claims under 42 U.S.C. § 1983**

"[Section] 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor,* 490 U.S. 386, 393-94 (1989) (internal quotations omitted). To prevail, a claimant must prove that a person acting under color of state law committed the conduct at issue, and the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States. 42 U.S.C. § 1983; *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), overruled on other grounds by *Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985).

A prisoner can state a claim against a prison official for an affirmative act, for participating in

the affirmative acts of another, or for not performing an act the official is legally obligated to do, so long as these acts or omissions cause the deprivation in question. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Id.*

### III. ANALYSIS

Defendants move to dismiss Plaintiff's claim that he was deprived of his procedural due process rights in violation of the Fourteenth Amendment, and his claim that he suffered cruel and unusual punishment in violation of the Eighth Amendment. (Dkt. No. 20.) For the reasons set forth below, this Court **RECOMMENDS** that the motion be **GRANTED** and that Plaintiff's claims be **DISMISSED.**

#### A. Due Process Claim

The United States Supreme Court has stated:

> The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake. A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word "liberty," or it may arise from an expectation or interest created by state laws or policies[.]

*Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citations omitted).

Plaintiff alleges that he was denied procedural due process at a disciplinary hearing when he was not permitted to present exculpatory photographs or video evidence. (Dkt. No. 5 at 4.) He claims that Defendant Powell conducted the hearing, and Defendant Delgado approved the denial of Plaintiff's grievance regarding the due process issue. *Id.* at 5-6.

The Constitution does not provide for a liberty interest in avoiding transfer to more adverse conditions of confinement; however, state statutes and prison regulations may grant prisoners liberty or property interests sufficient to invoke due process protection. *Meachum v. Fano*, 427 U.S. 215, 225-27 (1976). The Supreme Court has made clear that "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citations omitted).

Therefore, to state a claim for a due process violation, Plaintiff must allege facts to support a finding that he was subjected to a restraint that amounted to an atypical and significant hardship. There is no set standard for determining what is an atypical and significant hardship, and the "condition or combination of conditions or factors...requires case by case, fact by fact consideration." *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996).

The Supreme Court in *Sandin* outlined three general guidelines for determining whether a restraint amounts to an atypical and significant hardship. 515 U.S. at 485-87. First, this Court should consider whether Plaintiff's placement in administrative segregation was a "dramatic departure" from the basic conditions of his confinement. *Id.* at 485. A second consideration is the duration of the confinement and the degree of restriction imposed. *Id.* at 486. Finally, this Court should consider whether the prison's actions will "inevitably affect the duration of [Plaintiff's] sentence." *Id.* at 487.

Plaintiff alleges that he was housed in administrative segregation for 184 days.[2] (Dkt. No. 5 at 4.) While in administrative segregation, Plaintiff was kept in his cell for twenty-four hours a day, with the exception of an exercise hour. *Id.* He also had limited human contact, except for his "celly," and his visitation was conducted behind a glass window. *Id.* He had a plastic cover on the cell door obstructing the view out, and was kept in restraints while outside of his cell. *Id.* Plaintiff was not allowed personal property or appliances, and had limited law library access. *Id.* Plaintiff contends that prisoners who are not confined to administrative segregation are not subject to these limitations. *Id.*

Plaintiff has not adequately stated a liberty interest sufficient to invoke the Fourteenth Amendment. Generally speaking, placement in administrative segregation does not amount to an atypical and significant hardship. *See Sandin*, 515 U.S. at 486; *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003). It does not appear from the FAC that placement in administrative segregation affected the duration of Plaintiff's sentence. The conditions Plaintiff complains of do not constitute a "major disruption in his environment." *Sandin*, 515 U.S. at 486. Cases that have found an atypical and significant hardship involve situations far more severe than Plaintiff's. *See Wilkinson*, 545 U.S. at 223-24 (an atypical and significant hardship was found in placement in "supermax" facility; placement in the

---

[2] Plaintiff also alleged that he was transferred to High Desert State Prison. (Dkt. No. 5 at 4.) Generally, a prisoner does not have a liberty interest in avoiding transfer to another prison. *Meachum*, 427 U.S. at 224-25.

1  facility was indefinite and reviewed only annually, lights were on twenty-four hours a day, placement
2  made inmate ineligible for parole, and almost all human contact was prohibited); *Serrano*, 345 F.3d at
3  1078-79 (atypical and significant hardship when disabled prisoner was placed in segregation for two
4  months without access to his wheelchair; he could not take a proper shower, had difficulties using the
5  toilet, and had to "drag himself around a vermin and cockroach-infested floor"); *Ramirez v. Galaza*, 334
6  F.3d 850, 861 (9th Cir. 2003) (remanding for the District Court to determine whether a two year
7  placement in segregation amounted to an atypical and significant hardship; segregated unit was
8  overcrowded and violent, prisoner was "made a patient of psychiatric programs," and segregation
9  severed the prisoner's ties to his family).

10  Conversely, courts have found that no atypical and significant hardship was present in cases
11  similar to the one at bar. *See Bryant v. Cortez*, 536 F.Supp. 2d 1160, 1166-67 (C.D. Cal. 2008) (no
12  hardship in prisoner's placement in segregation for eighteen months, where prisoner had reduced
13  exercise, shower, hygiene, and visitation privileges); *Deadmon v. Grannis*, No. 06cv1382 LAB (WMC),
14  2008 WL 595883 at *6-8 (S.D. Cal. Feb. 29, 2008) (fifteen month segregation which included loss of
15  general population privileges, non-contact family visits, no phone calls, only one package a year, and
16  one shower every three days was not an atypical and significant hardship); *Jones v. Baker*, 155 F.3d
17  810, 812-13 (6th Cir. 1998) (over two years in administrative segregation is not atypical and significant
18  hardship); *Griffin v. Vaughn*, 112 F.3d 703, 706-08 (3rd Cir. 1997) (fifteen months in administrative
19  segregation is not an atypical and significant hardship).

20  Plaintiff has not alleged a liberty interest sufficient to invoke due process protection. Therefore,
21  this Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's due process claim be
22  **GRANTED** and the claim **DISMISSED**, with leave to amend.[3]

---

24  [3]Plaintiff states in his response to the pending motion that he also lost ninety days of good time credits as a result of this disciplinary hearing. (Dkt. No. 21 at 5.) Allegations that are raised in an opposition to a motion to dismiss that are not included in the operative complaint may not be considered in determining the motion. *Schneider v. California Dept. of Corr.,* 151 F.3d 1194, 1197 n. 1 (9th Cir. 1998). Although this Court is cautiously recommending that Plaintiff be granted leave to amend the FAC to cure its deficiencies, Plaintiff is advised that his due process claim may possibly be barred under *Heck v. Humphrey*, 512 U.S. 477 (1994). If, in fact, Plaintiff did have good time credits revoked as a result of the alleged due process violations, a decision in his favor could imply that the revocation was invalid. He would then need to show that the judgment against him had been overturned or otherwise called into question in order to proceed under § 1983. *Id.* at 486-87. This is the case even if Plaintiff is

Alternatively, even if Plaintiff alleged an adequate liberty interest, he does not state a claim against Defendant Delgado. The only factual allegation against this Defendant is that he approved the denial of Plaintiff's grievance regarding the alleged due process violation. (Dkt. No. 5 at 6.) A prisoner does not have due process rights related to the administrative grievance process. *See Ramirez*, 334 F.3d at 860. A prisoner's claim that a prison official denied a grievance, standing alone, is not sufficient to state a claim for a constitutional violation. *Riley v. Dunn*, No. CV 09-8850-JFW (MLG), 2011 WL 4940855 at *7 (C.D. Cal. Oct. 14, 2011); *see also Glosson v. Virga*, No. CIV S-11-1743 CMK P, 2011 WL 3555653 at *3 (E.D. Cal. Aug. 11, 2011). Accordingly, this Court alternatively **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's claim against Defendant Delgado be **GRANTED** and the claim **DISMISSED**.

### B.     Eighth Amendment Claim

Plaintiff contends that the lack of a surveillance camera monitoring the inmates on the main yard at Calipatria violated the Eighth Amendment bar against cruel and unusual punishment. (Dkt. No. 5 at 8.) Specifically, he argues that because the prison was aware of the fact that violence occurred on the yard, the lack of a camera amounts to a "failure to protect." *Id.* He filed a grievance about the lack of a camera, and the grievance was denied by Defendants Lewis, Kuzil-Ruan, Janda, and Caffarella. *Id.*

The Eighth Amendment protects prisoners from "inhumane conditions of confinement." *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Prisoners are entitled to "adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). However, the Eighth Amendment does not mandate comfortable prisons. *Farmer v. Brennan,* 511 U.S. 825, 832 (1994). Prisons can be both restrictive and harsh without violating the Constitution. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

"An Eighth Amendment failure to protect claim has two elements: (1) the condition complained of must be shown to present a substantial risk of serious harm, and (2) the defendant must be shown to have possessed a sufficiently culpable state of mind." *Palacios v. Chavez*, No. C 06-7619 PJH, 2011 WL 4527467 at *1 (N.D. Cal. Sept. 29, 2011); *see also Farmer*, 511 U.S. at 834. To satisfy the second requirement, a prisoner must allege that the prison official acted with "deliberate indifference." *Farmer*,

---

not seeking restoration of the credits. *See Edwards v. Balisok*, 520 U.S. 641 (1997).

511 U.S. at 834. A prison official acts with deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Plaintiff's concerns about the lack of a surveillance camera are too speculative to state a claim. Plaintiff does not allege any specific harm or threat to his safety, nor does he allege that the presence of a camera would thwart any threat. The allegation that "violence is possible" is not enough. *(*Dkt. No. 5 at 8.) Another consideration is the fact that Plaintiff is no longer housed at Calipatria; therefore, the potential of any future attack due to the lack of a camera at that prison is minimal.

Plaintiff also seems concerned about the fact that the presence of a camera may have exonerated him from any wrongdoing alleged against him. *See id*. ("the true participants in the incident [were] not identified and the videotape of the incident will not provide truth in a prison disciplinary hearing"). A possibility that a video recording may have exonerated Plaintiff from a disciplinary charge does not rise to the level of a substantial risk of serious harm necessary to state a claim under the Eighth Amendment.

Plaintiff also fails to meet the requirements of the second element of a "failure to protect" claim. He does not sufficiently allege facts to support his claim that Defendants Lewis, Kuzil-Ruan, Janda, and Caffarella acted with deliberate indifference. Nothing in the FAC indicates that these Defendants disregarded an "excessive risk" to Plaintiff's safety, because there is no specific threat to Plaintiff alleged in the complaint. Additionally, the sole basis of Plaintiff's claim against these Defendants is that they denied his grievance about the lack of a video camera. *Id.* As noted above, an allegation that a prison official denied a grievance is not sufficient to state a claim for a constitutional violation. *Riley* 2011 WL 4940855 at *7.

Therefore, this Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's Eighth Amendment claim be **GRANTED**, and the claim **DISMISSED**, with leave to amend.

**IV. CONCLUSION**

**ACCORDINGLY**, it is hereby

**RECOMMENDED**, that Defendants' motion to dismiss Plaintiff's First Amended Complaint be **GRANTED**; and it is further

1    **RECOMMENDED**, that Plaintiff be granted leave to amend his complaint to cure the
2 deficiencies as set out in this Report and Recommendation. If amendment is allowed, Plaintiff is
3 advised that his Second Amended Complaint must be complete in itself without reference to any
4 superseded pleading and contain all necessary exhibits. *See* Civil Local Rule 15.1.

5    This report and recommendation is submitted to the United States District Judge assigned to this
6 case pursuant to 28 U.S.C. § 636(b)(1).

7    **IT IS ORDERED** that no later than **January 31, 2013**, any party to this action may file written
8 objections with the Court and serve a copy on all parties. The document should be captioned
9 "Objections to Report and Recommendation."

10   **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and
11 served on all parties no later than **February 14, 2013.**  The parties are advised that failure to file
12 objections within the specified time may waive the right to raise those objections on appeal of the
13 Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

14   **IT IS SO ORDERED.**

16 DATED: December 24, 2012

_____
Hon. Nita L. Stormes
U.S. Magistrate Judge
United States District Court